

# THE ATTORNEY GENERAL

# OF TEXAS

## AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

August 1, 1957

Honorable C. H. Cavness
State Auditor
Austin, Texas

Opinion WW-209

Re: Would it be illegal for a
College Cafeteria to buy
milk from a member of the
Legislature who owns a
Dairy?

Dear Mr. Cavness:

You have asked this office for an opinion in response to the following question:

"Would it be illegal for a College Cafeteria to buy milk from a member of the Legislature who owns a dairy?"

In your letter you state that the cafeteria is operated as an auxiliary enterprise at the college; that all state college auxiliary enterprises handle their cash receipts and disbursements in a local bank account, and not through the State Treasury; and further that the contemplated buying of milk would be on a strictly competitive basis.

Since no particular institution is named in your letter, this opinion will be directed toward all of the state institutions of higher learning.

State colleges have always maintained some type of kitchen or dining hall for the use and benefit of the students. The authority for operating a dining hall derives from the general authority to operate the college. There are many statutes setting forth the duties and powers of the governing boards of the various colleges. Without quoting all of them, one example is found in Article 2647, Vernon's Civil Statutes, which reads in part as follows:

"1. The Board of Regents of the State Teachers' Colleges is charged with the responsibility of the general control and management of all State Teachers' Colleges for white persons. . . .

"7. . . . said Board shall have power to formulate and establish such rules for the general control and management of the State normal schools for

white teachers, for the auditing and approving
of accounts, and for the issuance of vouchers
and warrants as in their opinion may be neces-
sary for the efficient administration of such
schools."

Another example (Article 2643b, Vernon's Civil Stat-
utes) reads in part as follows:

"Sec. 7.  The Directors . . . shall enact
such by-laws, rules and regulations as may be
deemed necessary for the successful management
and government of the institution. . . ."

Prior to 1933, the governing boards of the several
state colleges apparently were permitted to disburse all of
their local income as they saw fit, within the limits of their
authority.  The 43rd Legislature, however, took over control of
all the student fees, and required such fees to be deposited in
the State Treasury, but permitted the colleges to continue to
operate their own auxiliary enterprises.

Article 2654d, Vernon's Civil Statutes, enacted in
1933 by the 43rd Legislature, reads in part as follows:

"Section 1.  The governing boards of . . .
/the various state colleges/ may retain control
. . . of . . . money collected at each of said
several institutions in carrying out the func-
tions of an educational institution, such as
. . . receipts from meals, cafes and cafeterias;
. . .

"Sec. 2.  The governing boards of the re-
spective institutions named in Section One above
are authorized to select depository banks as
places of deposit of all funds of the kind and
character named in Section One, . . ." (Brackets
ours).

The general appropriation to the various colleges
does not take into account the receipts and expenditures from
college cafeterias, since auxiliary enterprises are self-support-
ing.  The governing boards of the several state colleges are au-
thorized to ". . . construct or acquire through funds or loans
. . . without cost to the State of Texas, . . . kitchens and
dining halls, . . . /and/ are further authorized to fix fees
and charges for the use of the buildings. . . ."  Article 2603c,
Vernon's Civil Statutes.  (Brackets ours).

The governing boards are also authorized to issue revenue bonds for the construction of such buildings, and to pay for such buildings and retire the bonds from out of the revenue obtained in operating such buildings.

Section 18 of Article III, Constitution of Texas, reads in part as follows:

". . . Nor shall any member of the Legislature be interested, either directly or indirectly, in any contract with the State, or any county thereof, authorized by any law passed during the term for which he shall have been elected." (Emphasis ours).

Is a contract for the purchase of milk by a college cafeteria under competitive bid one that has been "authorized by any law passed during the term for which /a present member of the 55th Legislature/ shall have been elected?"

In the appropriation to each of the several colleges, (Appropriations Act, House Bill No. 133, Acts 55th Legislature, Regular Session, 1957, Article V., Agencies of Higher Education, pp. 1098 to 1143, inclusive) there is appropriated from out of the general revenue a certain grand total, and from this sum there is deducted the estimated other educational and general income, leaving a net general revenue appropriation. The estimated other educational and general income is composed largely of student fees. No part of the appropriation to any state college includes the revenues from the auxiliary enterprises, such as cafeterias.

In Attorney General's Opinion No. 0-1519 (1939), this office held that a member of the Legislature could not sell livestock to the Texas Prison System through the Board of Control; but the authority for the purchase of livestock by the Prison System was a line item in the appropriation act, which was passed at a term of the Legislature of which such Legislator was a member.

It follows then, that any money spent for the purchase of milk by a state college cafeteria comes from out of the revenues of such cafeteria, and does not involve tax money, student fees which must be deposited in the State Treasury, or any appropriated funds.

## SUMMARY

It is legal for a state college cafeteria to buy milk from a member of the Legislature, such cafeteria being a self-supporting, auxiliary enterprise of the college, not operated out of appropriated funds if the contract was not authorized by a statute passed during his term, and the contract for the purchase of milk being let on competitive bid.

Yours very truly,

WILL WILSON
Attorney General of Texas

By *Riley Eugene Fletcher*
Riley Eugene Fletcher
Assistant

REF:pf:wb

APPROVED:

OPINION COMMITTEE

H. Grady Chandler, Chairman
J. C. Davis, Jr.
Fred Werkenthin
Grundy Williams

REVIEWED FOR THE ATTORNEY GENERAL

BY:   Geo. P. Blackburn